

**FILED**
JUN 2 0 2012

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JON SOMMERVOLD | \* | |
| | \* | 1:11-CV-01028 |
| Plaintiff, | \* | |
| | \* | ORDER AND |
| -vs- | \* | OPINION |
| | \* | |
| WAL-MART, INC., | \* | |
| | \* | |
| Defendant. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant renews its motion pursuant to Fed. R. Civ. P. 12(b)(5) for dismissal for insufficient service of process. This motion is brought against plaintiff's claims of negligence and strict liability for alleged defective design and strict liability for failure to warn arising out of trauma he allegedly experienced from a remote-controlled toy water craft that he alleges exploded while he was handling it. This incident allegedly occurred on August 17, 2008.

On August 8, 2011, nine days before the statute of limitations was to run on plaintiff's claims, plaintiff caused to be served Josh Hehn, one of the assistant managers of defendant's store in Aberdeen, South Dakota, with a Summons and Complaint. After removing this action from South Dakota's Fifth Judicial Circuit, defendant brought a motion to dismiss for insufficient service of process. Defendant argued that plaintiff's service of an assistant manager at its Aberdeen store, rather than its designated resident agent, violated South Dakota's statute for service of process against corporations, SDCL § 15-6-4(d)(1). Defendant contended this violation required the court to dismiss plaintiff's claims with prejudice as the statute of limitations had long since run. After the court denied defendant's motion based upon an insufficient record, defendant renews its motion, now supported by affidavits which affidavits are not disputed by plaintiff.

I.   **DISCUSSION**

South Dakota law governs the commencement of a civil action when the action is removed from state court to the federal court on a theory of diversity jurisdiction. *See* Winkels v.

1

George A. Hormel & Co., 874 F.2d 567, 570 (8th Cir. 1989). "Since federal rules govern proceedings only after removal, [FRCP] Rule 3 is irrelevant to whether action was properly commenced in state court prior to removal." Id. South Dakota statutes also govern with regard to tolling for statute of limitations purposes. *See* Groninger v. Davison, 364 F.2d 638, 641, 642 (8th Cir. 1966). Nonetheless, citing Fed. R. Civ. P. 12(b)(5) is an appropriate basis for objecting when defendant alleges "any . . . failure to comply with the procedural requirements in the applicable [federal or state] service provisions." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5B FEDERAL PRACTICE AND PROCEDURE § 1353, at 335-36 (3d ed. 2004).

Fundamentally, "the issue of the validity of service of process is a question of law." Lekanidis v. Bendetti, 613 NW2d 542, 545 (S.D. 2000). A district court has the power to dismiss a case for failure to comply with its rules. Marshall v. Warwick, 155 F.3d 1027, 1029 (8th Cir. 1998). "Any factual question raised by the affidavits or other evidence presented on a Rule . . . 12(b)(5) motion should be determined by the district court in accordance with Rule 12(d) except that factual issues intertwined with the merits of the case may have to wait until trial for their resolution and cause a deferral of a decision on the motion." WRIGHT & MILLER, § 1353, at 345. Both parties have now made a better record as to the material facts relevant to service of process.

Prior to February 25, 2005, the effective date of a new version of the then version of SDCL 15-6-4(d), a plaintiff was permitted by SDCL 15-6-4(d)(2) to serve a foreign corporation (such as Wal-Mart) by leaving a copy of the summons with the president or other head of the corporation, secretary, cashier, treasurer, a director or managing agent of such corporation. By virtue of SDCL 15-6-4(e), substituted service was authorized as to both domestic and foreign corporations. Thus, as to any private corporation, if **no** general officer (whatever that meant), director, managing agent, or other representative mentioned in 15-6-4(d) as qualified to receive service could "conveniently be found", service could be made by leaving a copy of the summons at the place of business of such qualified person with any officer or employee over fourteen years of age. Service as to a domestic private corporation was governed by SDCL 15-6-4(d)(1).

Since February 25, 2005, the requirements for service have changed. The revised version covers all defined business entities, including, of course, both domestic and private corporations.

2

Service is to be made on the president, partner or other head of the entity, officer, director, or registered agent. The revised statute provides that if "**any**" such person "cannot be conveniently found", service may be made by leaving a copy "at any office of such business entity within this state, with the person in charge of such office." (emphasis supplied). Why the word "any" was substituted for "no", I do not know. Obviously, it is highly unlikely that all officers and directors of most large foreign corporations, such as Wal-Mart, are going to be found in South Dakota. That is precisely the reason that such corporations appoint resident agents. The present version allows substituted service, for example, as to Wal-Mart if one of the directors or officers cannot conveniently be found in South Dakota. Common sense tells us that such will always be the case as to large multi-state corporations. There is nothing in the record before the court to show that all officers and directors of Wal-Mart can or cannot conveniently be found in South Dakota. Again, if any one of the persons named cannot conveniently be found in South Dakota, the service here was valid if the assistant manager in Aberdeen was "the person in charge of such office." I note that the statute says "the person" and not "a person."

As noted above, SDCL 15-6-4(d)(1) governs. Service is properly made, as to a corporation:

> on the president, partner or other head of the entity, officer, director, or registered agent thereof. If any of the above cannot be conveniently found, service may be made by leaving a copy of the summons and complaint at any office of such business entity within this state, with the person in charge of such office.

Id. For ease of reference in this order, service made on persons listed in the first sentence is "primary service." All remaining persons listed in the statute receive "secondary service." Compliance with the statute is not discretionary and the statutory list of persons is "exhaustive." White Eagle v. City of Fort Pierre, 606 NW2d 926, 929 (S.D. 2000) (citing Matter of Gillespi, 397 NW2d 476, 478 (S.D. 1986)).

Wal-Mart continues to assert, as it did in its first motion, that plaintiff was required to serve the registered agent, one of the listed primary persons for service of process. I once again reject that strained interpretation of SDCL 15-6-4(d)(1). For the purpose of this motion, I am assuming that at least one of the corporate officers or at least one of the board of directors of Wal-Mart cannot be conveniently found in South Dakota. At a minimum, the plaintiff is entitled

3

to such assumption for the purpose of considering the motion to dismiss. As used in this statute, the word "any" means "all." Almost all cases to be found in federal or state courts support such a reading. The term "any" as used in a South Dakota statute means "all" or "every" and suggests a broad and expansive meaning. Cent. Monitoring Serv., Inc. v. Zakinski, 553 NW 2d 513, 517 (S.D. 1996).

The service made in this case would meet the requirements of the statute if the person served, Mr. Hehn, was the "person in charge" of the Wal-Mart store at the time service was made. The record is clear that Mr. Hehn was not the "person in charge", that the actual manager, Brian Bjordal, the actual "person in charge", was in the store and on duty when service was attempted. To make matters worse for the plaintiff, he had his receipt of purchase (attached to Doc. 23, plaintiff's memorandum of law) which showed clearly that the manager of the store in question was Brian Bjordal. There is nothing in the record to show that plaintiff or his attorneys directed service to be made on Brian Bjordal or that they gave any other instructions to the process server. Knowledge that the statute of limitations will soon run tells counsel that very careful attention must be paid to proper service of process to obtain jurisdiction. The record is now undisputed that service was not made in compliance with the statute.

Put another way, there was not strict compliance with the statute and plaintiff must show that Wal-Mart received actual notice of his claims before the statute expired. There is nothing in the record to show when properly authorized officers of Wal-Mart received actual notice. However, for the purpose of this motion, the court assumes that such actual notice was timely. The question then becomes: did plaintiff also show that he "substantially complied" with the statute by what was done here? *See* Wagner v. Truesdell, 574 NW 2d 627, 629 (S.D. 1998). We will discuss this question in more detail later.

### A. Strict Compliance

Plaintiff's counsel argue that primary service was not convenient because eight entities with the Wal-Mart name ("Wal-Mart entities") were registered with the South Dakota Secretary of State around the time of service. All Wal-Mart entities operating in South Dakota, including

4

defendant, have the same registered agent for service purposes—CTS Corporation, located in Pierre, SD. Plaintiff's counsel admit knowing this when plaintiff sought service of process.

Plaintiff's convenience argument boils down to two points. First, plaintiff's counsel cite a bad experience they had with the Hughes County Sheriff's Office for service of process—the office having taken a week to fulfill its service obligation, in a time-sensitive matter, according to plaintiff's counsel—and second, because of "the vagueness over the various Wal-Mart's in South Dakota," plaintiff's counsel chose to serve the store that sold the item in question by private service to ensure precise notice to defendant.

Counsel for the plaintiff's prior knowledge of CTS Corporation's existence and status as the registered agent for all South Dakota-based Wal-Mart entities renders their claim that primary service was not convenient incredible on its face. Counsel for the plaintiff's only argument supporting this point is that even if they served CTS Corporation, they still would not have known which entity they should place as a party on the summons and complaint in order to perfect service. If plaintiff's counsel directed service to the wrong Wal-Mart subsidiary via CTS Corporation, a seven-in-eight chance, they contend that they would not be able to validly bring these claims before the statute of limitations ran, citing Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 885 (8th Cir. 1996). Plaintiff's counsel, however, fail to recognize a rather common strategy of litigators nationwide who face similar quandaries: they could have simply named all eight parties as defendants in the complaint. They could have included in the caption "d/b/a Wal-Mart in Aberdeen, S.D." While South Dakota requires particularity in listing a party to be served, *see* R.B.O. v. Priests of the Sacred Heart, 807 NW 2d 808, 811, 812 (S.D. 2011), accurately listing the names of all eight Wal-Mart entities as they appear with the Secretary of State would have been sufficient to provide proper process, permitting the other entities to easily dispense with the matter via motions to dismiss or a simple stipulation to dismiss. Plaintiff's counsel knew the names of all the Wal-Mart entities before seeking service. The failure of plaintiff's counsel to employ this rather basic strategy to achieve primary service indicates that any "vagueness" was ephemeral.

On his second theory of inconvenience, plaintiff's counsel resurrects the argument that the Hughes County Sheriff's prior actions made service on CTS Corporation inconvenient, even though this argument was rejected in the prior order. There are three reasons why this argument is deficient. First, even if plaintiff chose the Hughes County Sheriff's Office to serve process on the day they tapped the private process server to act, and the office reprised its difficulties and served process a week late, they still would have served defendant's registered agent before the statute of limitations had run. Second, South Dakota law accounts for delayed service of process by sheriffs in granting what is, in effect, a sixty-day extension of the statute of limitations from the time plaintiff delivers a copy of the summons to the sheriff with the directive to serve it. Edsill v. Schultz, 643 NW 2d 760, 762–63 (S.D. 2002) (citing SDCL 15-2-31). Third, plaintiff's counsel could have simply used a private server—as they did in Aberdeen—to serve CTS Corporation in Pierre. In other words, plaintiff's counsel had two means of conveniently and timely delivering process to CTS Corporation in Pierre, and chose to use neither.

Since both arguments showing inconvenience are unavailing to plaintiff's counsel, plaintiff is unable to meet his burden to prove strict compliance with SDCL 15-6-4(d)(1). Plaintiff must instead rely upon the doctrine of substantial compliance to prevent dismissal.

### B.   Substantial Compliance

Normally, proper service requires a strict adherence to the terms of the statute. This is because "[p]roper service of process is no mere technicality: that parties be notified of proceedings against them affecting their legal interests is a 'vital corollary' to due process and the right to be heard." Spade v. Branum, 643 NW 2d 765, 768 (S.D. 2002) (citing Schroeder v. City of N.Y., 371 U.S. 208, 212 (1962)). The purpose of service and the law's strident desire for conforming to terms of service is to first advise that a legal proceeding has been commenced, and then to warn those affected to appear and respond to the claim. Id. (citing Wagner v. Truesdell, 574 NW 2d 627, 629 (S.D. 1998)). The South Dakota Supreme Court's doctrine of substantial compliance arises out of these two goals. "'Substantial compliance' with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It

means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted." Wagner, 574 NW 2d at 629 (quoting State v. Bunnell, 324 NW 2d 418, 420 (S.D. 1982)). In practice, this means that the plaintiff must prove two facts to show that service was in substantial compliance with the statute: (1) that the defendant received "actual notice" of the complaint, and (2) that plaintiff did all that was reasonably possible—guided by the service statute's reasonable objectives and considering the totality of the circumstances—to effectuate personal service on the defendant. *See* Wagner, 574 NW 2d at 629–30 ("The realities of a case must be considered when proper service of process is questioned."); *see also* R.B.O., 807 NW 2d at 812 ("After considering 'the realities' of [Wagner], we held that a strict reading of SDCL 15-6-4(d)(10) 'would be an absurdity.'").

The most recent authority on "substantial compliance" applied to service of process in South Dakota is R.B.O. v. Priests of the Sacred Heart, *supra*. In that case, former students of a parochial school on the Lower Brule Indian Reservation in South Dakota brought suit against the religious organization that ran the school. 807 NW 2d at 809. These plaintiffs asserted claims of childhood sexual abuse. Id. Defendant filed a motion to dismiss, alleging plaintiffs failed to timely serve process. Id. In commencing this action, among other missteps, plaintiffs served the correct registered agent of defendant, but the documents plaintiffs provided to the process server did not include the proper defendant among the nine defendants listed on the summons and complaint—Priests of the Sacred Heart, Inc. Id. at 810. Instead, the documents instructed the process server to serve the "Congregation of the Priests of the Sacred Heart, Inc.," which was a distinct entity from defendant. Id. While the lower court found that plaintiffs substantially complied with the same service of process statute at issue here, SDCL 15-6-4(d)(1), the South Dakota Supreme Court found these errors to be too great and reversed the lower court. In particular, the Court found that no "actual notice" resulted from the service. The Court felt that "there was a logical need for Plaintiffs to direct service to the correct business entity" in order to substantially comply with the statute. Id. at 812.

7

The Court in R.B.O. bolstered its finding by citing to White Eagle v. City of Fort Pierre, *supra*. In that case, the Court found that plaintiff did not substantially comply with the "service upon a public corporation" statute, SDCL 15-6-4(d)(4) (current version at SDCL 15-6-4(d)(2)(ii)), when it attempted to commence an action against the City of Fort Pierre by serving the city's financial officer instead of the "mayor or any alderman or commissioner" as required under the statute. R.B.O., 807 NW 2d at 812 (citing White Eagle, 606 NW 2d at 927). In White Eagle, as in this case, the Court found that "there was no showing that the mayor or any one of the six common council members could not have been conveniently or timely served." Id. at 930. Also as in this case, "actual notice" was not at issue. The Court implied that a reasonable objective of the statute was to ensure that process was delivered to the persons listed. Id. ("Absent such service, there is not actual compliance with respect to the substance essential to every reasonable objective of the statute.") Indeed, to hold otherwise, according to the Court, "would ultimately serve to eradicate service of process statutes." Id. In other words, actual notice alone is insufficient.

Plaintiff asks the court to restrict the South Dakota Supreme Court's decision in R.B.O. to prospective application, so as not to apply to this controversy. Such a request is redundant. White Eagle provides sufficient, applicable authority to this controversy and was decided in 2000, well before plaintiff filed this case in 2011. Indeed, while R.B.O. is the more recent controversy, White Eagle is the more relevant matter to this proceeding. In R.B.O., the Court decided that substantial compliance did not exist because defendant never received true "actual notice" from the service. White Eagle did not analyze this first step in the substantial compliance inquiry, instead focusing upon the second step, which is the main issue in this case—whether plaintiff complied with the reasonable objectives of the statute.

Since plaintiff failed to pursue primary service without showing any actual inconvenience existed, it is arguable that plaintiff did not comply with the underlying reasonable objectives of the statute. As in the municipality service of process statute at issue in White Eagle, the South Dakota Legislature took pains to identify the persons to be served in

8

15-6-4(d)(1). The Court in White Eagle found that seeking to serve persons other than those listed is not actual compliance with the underlying objectives of the statute. The Legislature also specifically included a safety valve—convenience—which requires all plaintiffs to look to primary service first. Making a failure to find inconvenience a failure to actually comply with underlying objectives would give meaning to every word provided by the Legislature, in keeping with a strict compliance theory. See Gillespi, 397 NW 2d at 478. However, under a substantial compliance theory, the service of process statute may not be "eradicated," as envisioned in White Eagle, if the plaintiff failed to exhibit true inconvenience. For example, SDCL 15-6-4(d)(1) provides another method if primary service is not made—secondary service. With actual notice assumed, if plaintiff could show that he actually served "the person in charge" of defendant's "office" by serving Mr. Hehn, his claims could survive dismissal.

      Plaintiff is unable to meet this burden. According to the affidavits filed by defendant, Mr. Hehn was only in charge of the apparel department and the courtesy department when he was served by plaintiff's private process server. Mr. Hehn avers that he had never and has since never received legal documents on behalf of defendant. At the time of service, the shift manager and store manager were both present at the store, comprising two higher levels of authority than the multiple assistant managers located throughout the store at any given time. To ignore two levels of authority present at the store and find that *the* person in charge was rightly served would be absurd. Plaintiff's counsel served none of the actors defined by statute. If the court accepts the plaintiff's argument, the service of process statute would be "eradicated." In keeping with White Eagle, such an outcome tells us that plaintiff failed to substantially comply with SDCL 15-6-4(d)(1).

      It is a most unpleasant task for any judge to dismiss a case at this stage. I must nevertheless do what I think is required under all the circumstances.

      Because plaintiff failed to strictly or substantially comply with the applicable service of process statute, plaintiff's claims should be dismissed pursuant to Rule 12(b)(5).

### III. ORDER

Based upon the foregoing,

IT IS ORDERED that defendants' renewed motion, Doc. # 18, to dismiss plaintiff's complaint is granted, without the taxation of costs.

Dated this ___19th___ day of June, 2012.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY
(SEAL)

10